IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GUILLERMO LOPEZ-CASILLAS,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255**<br><br>Case No. 2:20-cv-00236-JNP-DAO<br><br>District Judge Jill N. Parrish |

Before the court is Petitioner Guillermo Lopez-Casillas's ("Lopez-Casillas") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (the "§ 2255 Motion"). Case No. 2:20-cv-00236 ("Civil Case") ECF No. 1. Respondent United States of America (the "Government") filed a response to the § 2255 Motion, Civil Case ECF No. 21, and Lopez-Casillas filed a reply, Civil Case ECF No. 23. For the reasons set forth below, the court DENIES Lopez-Casillas's § 2255 Motion.

## BACKGROUND

On August 26, 2015, a federal grand jury returned an indictment charging Lopez-Casillas with two counts of Possession of a Controlled Substance with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1). Case No. 2:15-cr-00488 ("Criminal Case") ECF No. 1. These charges stemmed from several packages of narcotics that were seized from Lopez-Casillas's vehicle following a traffic stop on the morning of August 14, 2015.

On September 7, 2016, Lopez-Casillas moved to suppress all of the evidence seized from his vehicle during the traffic stop. Criminal Case ECF No. 32. The court held an evidentiary hearing on the motion to suppress on January 4, 2017. Criminal Case ECF No. 51. At the hearing,

1

Trooper Jared Withers of the Utah Highway Patrol testified that at around 10:00 AM on August 14, 2015, he stopped Lopez-Casillas's vehicle because it was speeding and had windows that were tinted in violation of Utah law. *See* Criminal Case ECF No. 53 at 11:14–12:24. Trooper Withers further testified that when he asked Lopez-Casillas whether he had a driver's license, Lopez-Casillas admitted that his driver's license was currently suspended. *Id.* at 26:5–8. Although Lopez-Casillas was accompanied by a passenger in his vehicle, the passenger was only fifteen years old and, consequently, similarly unauthorized to drive the vehicle. *Id.* at 26:9–18.

Trooper Withers testified that, later in the encounter, with his suspicions aroused that Lopez-Casillas was transporting narcotics, he asked Lopez-Casillas for permission to search his vehicle. *Id.* at 37:21–39:20. Lopez-Casillas nodded his head "yes" and verbally assented to the search. *Id.* at 39:18–20. Trooper Withers testified that before conducting the search, he positioned Lopez-Casillas approximately 50 feet from the vehicle and instructed Lopez-Casillas to yell if he had a problem with anything that Trooper Withers was doing during the search. *Id.* at 40:1–10. During the search, Trooper Withers discovered several packages that were vacuum-sealed in plastic and wrapped in tape, as well as one larger plastic container. *Id.* at 43:23–44:17. Trooper Withers testified that he found these packages and container in the space between the floor of the trunk and the car's bumper, and that they "weren't hidden very well" and were almost immediately visible when he crouched down beside the rear bumper. *Id.* at 43:22–44:11. Based on his experiences, Trooper Withers concluded that some or all of the packages contained narcotics. *Id.* at 44:17–21. Trooper Withers subsequently placed Lopez-Casillas and the passenger under arrest, *id.* at 44:23–25, and the packages were seized.

In addition to Trooper Withers's testimony, the Government also offered exhibits into evidence at the evidentiary hearing, including Government's Exhibit 1, which was a USB drive

with a video and audio recording of the traffic stop. *Id.* at 13:10–15, 15:7–8. Lopez-Casillas's counsel did not object to the Government's introduction of Government's Exhibit 1. *Id.* at 15:7–23. However, the court was unable to play the video and audio of the traffic stop on the USB drive that the Government submitted as Exhibit 1, Criminal Case ECF No. 63, so the parties stipulated to the introduction of Government's substitute Exhibit 1, Criminal Case ECF No. 66, which was "another copy of the video" that was placed on "an unencrypted thumb drive," *id.* at 2. Lopez-Casillas's counsel "reviewed substitute Exhibit 1 and stipulate[d] to its admission." *Id.* Lopez-Casillas alleges that—both prior to the evidentiary hearing and after the Government submitted substitute Exhibit 1—he repeatedly asked his counsel to "retain an expert to analyze the original evidence offered and the copied audio and video files subsequently offered by the government" because the audio and video recordings offered by the Government "were edited in a manner which rendered them inaccurate, incomplete and misleading." Civil Case ECF No. 1 at 8–9.

On May 3, 2017, the court denied Lopez-Casillas's motion to suppress, Criminal Case ECF No. 74, holding, in part, that Lopez-Casillas freely and voluntarily consented to Trooper Withers's search of his vehicle, *id.* at 16. The court also noted that, even if the entire search was unreasonable or otherwise illegal, the evidence at issue still would have been admissible under the inevitable discovery doctrine. *Id.* at 11 n.2.

Lopez-Casillas proceeded to trial and, on June 7, 2017, the jury returned a guilty verdict on all counts. Criminal Case ECF No. 124. Lopez-Casillas was subsequently sentenced to 262 months in custody and 5 years of supervised release. Criminal Case ECF No. 147. Lopez-Casillas appealed his sentence, which was affirmed by the Tenth Circuit. *United States v. Lopez-Casillas*, 750 F. App'x 766 (10th Cir. 2019). Lopez-Casillas alleges that, although he asked his appellate counsel to argue on direct appeal that the district court erred in denying his motion to suppress,

appellate counsel only challenged the imposition of special conditions of supervised release. *See* Civil Case ECF No. 1 at 20.

On April 7, 2020, Lopez-Casillas timely filed his § 2255 Motion. Civil Case ECF No. 1. In the § 2255 Motion, Lopez-Casillas asserted three grounds for relief, arguing that he was denied the effective assistance of counsel in connection with the suppression hearing because his counsel (1) "fail[ed] to retain and utilize the necessary expert witness to analyze and authenticate the original USB drive" that the Government offered as Government's Exhibit 1 and (2) "fail[ed] to challenge the admissibility of the inaccurate and incomplete copies of video and audio evidence which the government relied on at the suppression hearing, under Rules 1002 and 1003 of the Federal Rules of Evidence." *Id.* at 6–8. As a third ground for relief, Lopez-Casillas argued that he was denied the effective assistance of appellate counsel when his appellate counsel failed to appeal the court's denial of his motion to suppress. *Id.*

## LEGAL STANDARD

To prevail on a claim of ineffective assistance of counsel ("IAC"), a petitioner must show (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). These elements have been termed the "performance prong" and the "prejudice prong," respectively, *see Grant v. Royal*, 886 F.3d 874, 906 (10th Cir. 2018), and "[a]n insufficient showing on either element is fatal to an ineffective-assistance claim," *Smith v. Duckworth*, 824 F.3d 1233, 1249 (10th Cir. 2016).

To satisfy the performance prong, a petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. This is a challenging standard for a petitioner to satisfy, since "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Indeed, "counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment," *Hooks v. Workman*, 689 F.3d 1148, 1187 (10th Cir. 2012) (citation omitted), and the "petitioner bears a heavy burden when it comes to overcoming that presumption," *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011) (citation omitted). Thus, "[t]o be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong." *Hooks*, 606 F.3d at 723 (internal citations and quotation marks omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

To satisfy the prejudice prong, a petitioner must show that counsel's deficient performance "actually had an adverse effect on the defense." *Id.* at 693. That is, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In addition, when a petitioner's IAC claim is premised on "defense counsel's failure to litigate a Fourth Amendment claim competently," the petitioner must "prove that his Fourth Amendment claim is meritorious" in order to show that he was prejudiced by his counsel's alleged incompetence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

When a court evaluates an IAC claim, it may analyze the performance and prejudice prongs in any order. *Strickland*, 466 U.S. at 697. In addition, if the court determines that the petitioner has made an insufficient showing on the first prong that it analyzes, the court need not even address the other prong before rejecting the claim. *Id.* ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of

5

the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

## ANALYSIS

I. **Lopez-Casillas's Claims of Ineffective Assistance of Counsel in Connection with the Suppression Hearing**

Lopez-Casillas argues that he was denied the effective assistance of counsel in connection with the suppression hearing because his trial counsel (1) failed to retain an expert witness, who would have demonstrated that the video and audio evidence on which the Government relied at the suppression hearing "did not accurately and completely reflect what had occurred during the traffic stop," and (2) failed "to challenge the admissibility of the inaccurate and incomplete copies of video and audio evidence which the government relied on at the suppression hearing, under Rules 1002 and 1003 of the Federal Rules of Evidence." Civil Case ECF No. 1 at 6–8. Lopez-Casillas further argues that, had his trial counsel not made such alleged errors, there is a reasonable probability that the court would have granted his motion to suppress and, consequently, that the Government would not have had sufficient evidence to secure a conviction. Because the court concludes that Lopez-Casillas is unable to demonstrate that he was prejudiced by his counsel's purported errors, the court's analysis of these IAC claims begins and ends with the prejudice prong. *See Strickland*, 466 U.S. at 697.

First, Lopez-Casillas asserts that, if his counsel had retained an expert "to analyze and authenticate the original USB drive," the expert would have revealed that the video and audio evidence on which the Government relied at the suppression hearing was doctored. Civil Case ECF No. 1 at 6–7. Lopez-Casillas appears to further contend that this revelation would have led the court to view and listen to the original versions, which "would have established that Mr. Lopez-Casillas'[s] consent was coerced, resulting in suppression of all evidence seized as a result of the

unconstitutional search." *Id.* at 11–12. However, apart from this conclusory statement and vague assertions that the allegedly edited audio and video do "not accurately and completely reflect what had occurred during the traffic stop," *id.* at 7, 10, and omit "relevant portions," *id.* at 7 n.7, Lopez-Casillas has failed to detail with any specificity what the original video would reveal that would lead the court to conclude that his consent was coerced. Therefore, even if an expert had discovered that the substitute video and audio evidence was doctored and the court viewed and listened to the unedited originals as a result, the court is not persuaded that it would have ruled differently on the issue of consent.[1]

Lopez-Casillas appears to assert that, alternatively, an expert's discovery that the Government's video and audio evidence was tampered with would lead the court—at a minimum—to disregard that evidence and, consequently, grant his motion to suppress. In fact, Lopez-Casillas's second ground for claiming that his counsel was ineffective at the suppression

---

[1] The Government further argues that Lopez-Casillas's claim that his counsel was ineffective for failing to retain an expert fails because his counsel did, in fact, retain an expert. However, the court believes that the Government has misconstrued Lopez-Casillas's argument. Specifically, the court believes that Lopez-Casillas is arguing that his counsel should have retained an expert to examine the video and audio on the original, inoperable USB drive for any evidence of tampering (or, alternatively, retained an expert to compare the video and audio on the original, inoperable USB drive to the substitute versions that were subsequently offered to the court). *See* Civil Case ECF No. 1-1 ¶ 5 ("Later, Mr. Garcia told me that the video and audio was authenticated, but the authentication process was flawed. The original USB was never analyzed and the authentication process Mr. Garcia told me about consisted of comparing two copies and determining that those two copies were identical. No analysis of the original USB has ever been presented to me."). The Government has produced evidence that an expert compared multiple videos of the traffic stop in order to identify any evidence of tampering, but it does not appear that any of the analyzed videos were directly from the inoperable USB, which is consistent with the fact that the USB was inoperable. Therefore, it does not appear that the expert that Lopez-Casillas's counsel retained performed the exact analysis or comparison that Lopez-Casillas currently argues should have been performed (it should be noted, though, that such an analysis or comparison may have been impossible because the original USB was inoperable). Regardless, because the court denies Lopez-Casillas's IAC claim for the reasons provided in the main text, the court need not—and does not—fully address the Government's argument.

hearing is "for failing to challenge the admissibility of the inaccurate and incomplete copies of video and audio evidence which the government relied on at the suppression hearing." *Id.* at 12–13. But the court is similarly not convinced that the result of the suppression hearing would have been different if the allegedly doctored video and audio evidence had been excluded from that hearing.

Specifically, at the suppression hearing, the Government produced evidence that Lopez-Casillas voluntarily consented to the search of his vehicle that was independent of the video and audio evidence. In particular, Trooper Withers testified that Lopez-Casillas responded "Yes" when he asked Lopez-Casillas whether he could search his vehicle. Criminal Case ECF No. 53 at 39:18–20 ("At that point I did ask Mr. Lopez-Casillas if I could search the vehicle, and his response was yes, you can search the vehicle, sir, while he was shaking his head yes."). In addition, Trooper Withers testified that he explicitly informed Lopez-Casillas that Lopez-Casillas could object to "anything that [Trooper Withers] was doing" during the search. *Id.* at 40:2–7. Lopez-Casillas has not persuaded the court that this evidence independent of the video and audio evidence would have been insufficient to find that Lopez-Casillas freely and voluntarily consented to the search of his vehicle. *See United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001) ("Whether voluntary consent was given is a question of fact, determined by the totality of the circumstances and reviewed for clear error. We have utilized a two-part test to make this determination: First, the government must proffer clear and positive testimony that consent was unequivocal and specific and freely given. Furthermore, the government must prove that this consent was given without implied or express duress or coercion." (internal citations and quotation marks omitted)).

Moreover, even if the court agreed that it would have ruled differently at the suppression hearing on the issue of consent if Lopez-Casillas had retained an expert or the court had excluded

8

the allegedly inaccurate video and audio evidence, Lopez-Casillas still would not be able to demonstrate prejudice from his counsel's alleged errors. Specifically, Lopez-Casillas does not dispute that the evidence seized from the vehicle still would have been admissible pursuant to the inevitable discovery doctrine, even if the court had concluded that his consent was invalid and the evidence was seized as a result of an unlawful search. *See Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Haro-Salcedo*, 107 F.3d 769, 773 (10th Cir. 1997). Indeed, it is undisputed that, at the time the search occurred, there was no one available to drive Lopez-Casillas's vehicle. Lopez-Casillas's driver's license was suspended, and his fifteen-year-old passenger was not old enough to drive. *See* Criminal Case ECF No. 53 at 25:25–26:18. In addition, Lopez-Casillas did not know anyone in the area who could have taken the car. *See id.* at 33:21–34:4. Accordingly, "[t]he vehicle, of necessity, had to be impounded," *Haro-Salcedo*, 107 F.3d at 771, as Utah law permits. *See Roberts v. Bradshaw*, No. 2:04-CV-1113 DAK, 2006 U.S. Dist. LEXIS 100372, at *15 (D. Utah Mar. 22, 2006) ("State law permits impounding a vehicle when 'the person responsible for the vehicle is unable to provide for its custody or removal.'" (quoting UTAH CODE § 41-6a-1405(3)(b))).

Based on Trooper Wither's testimony that the packages of drugs "weren't hidden very well" and were almost immediately visible when he crouched down beside the rear bumper, the court concludes that, if the vehicle had been impounded, a proper inventory search inevitably would have led to the discovery of the contraband. *See* Criminal Case ECF No. 53 at 43:22–44:4. Accordingly, the contraband would have been admissible at trial under the inevitable discovery doctrine. *See United States v. O'Neil*, 62 F.4th 1281, 1291 (10th Cir. 2023) ("[I]f evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible."); *United States v. Zapata*, 18 F.3d 971, 978–79 (1st Cir. 1994) (collecting

9

cases supporting this proposition). Thus, even if the court concluded that the Government violated the Fourth Amendment when it searched Lopez-Casillas's vehicle and seized the contraband, the court still would have denied Lopez-Casillas's motion to suppress. *See Haro-Salcedo*, 107 F.3d at 773 ("The inevitability of discovering evidence by lawful means removes the taint from evidence first discovered through unlawful means. Consequently, if evidence seized unlawfully would have been inevitably discovered pursuant to a legal search, the evidence is admissible." (internal citation omitted)).

Accordingly, Lopez-Casillas has failed to demonstrate that, but for counsel's failure to retain an expert or challenge the admissibility of the video and audio evidence on which the Government relied, the result of the suppression hearing would have been different. Thus, Lopez-Casillas has failed to demonstrate that he was prejudiced by counsel's alleged errors, *see Strickland*, 466 U.S. at 694, and, consequently, the court denies his ineffective IAC claims related to the suppression hearing.

## II. Lopez-Casillas's Claim of Ineffective Assistance of Appellate Counsel

Lopez-Casillas further argues that he should be afforded relief because he was denied the effective assistance of appellate counsel. Specifically, Lopez-Casillas asserts that his appellate counsel was constitutionally ineffective for failing to appeal the denial of his motion to suppress. The court disagrees.

To establish ineffective assistance of appellate counsel, a petitioner must satisfy *Strickland*'s two-prong test. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). "When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, [the court] first examine[s] the merits of the omitted issue. If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective

assistance." *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). "If the issue has merit, [the court] then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial." *Id.* Moreover, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal," *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)), and, while "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent," *id.*

Here, Lopez-Casillas has failed to prove that the omitted issue—objection to the court's denial of his motion to suppress—has any merit. Specifically, in addition to the ample evidence that Lopez-Casillas consented to the search of his vehicle, *see generally* Criminal Case ECF No. 74, Lopez-Casillas has not contested the court's statement in the order denying his motion to suppress that the evidence still would have been admissible pursuant to the inevitable discovery doctrine, even if the court had concluded that his consent was invalid, *id.* at 11 n.2. Because the Tenth Circuit could have relied on any basis—including the inevitable discovery doctrine—in affirming the court's order denying Lopez-Casillas's motion to suppress, Lopez-Casillas has failed to convince the court that there is any likelihood that the Tenth Circuit would have reversed the court's order. *See Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir. 1988) ("[W]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." (internal quotation marks and citation omitted)). Indeed, as discussed previously, there is substantial evidence that the contraband would have been inevitably discovered following a valid impoundment and inventory search, and Lopez-Casillas has not suggested otherwise. Therefore, the court concludes that Lopez-

11

Casillas has failed to sufficiently prove that the omitted suppression issue has merit and that his appellate counsel rendered constitutionally ineffective assistance. Thus, the court denies Lopez-Casillas's ineffective assistance of appellate counsel claim.

## CONCLUSION AND ORDER

Upon review of the motion, files, and records of the case, the court finds that they conclusively show that Lopez-Casillas is not entitled to relief on any of his claims for ineffective assistance of counsel. Therefore, the court DENIES Lopez-Casillas's § 2255 Motion without conducting an evidentiary hearing.[2]

DATED September 29, 2023.

BY THE COURT

Jill N. Parrish
United States District Court Judge

---

[2] "Under 28 U.S.C. § 2255, the district court is required to conduct an evidentiary hearing 'unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000) (citation omitted). Because the court finds that the motion, files, and records of the case "conclusively show that [Lopez-Casillas] is entitled to no relief," the court does not find that an evidentiary hearing is necessary. *See* 28 U.S.C. § 2255(b); *United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996) (holding that a district court did not abuse its discretion in denying a petitioner an evidentiary hearing on his § 2255 motion when "the existing record clearly shows that [the petitioner] is not entitled to relief").